UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DR. AGDEL JOSE HERNANDEZ-COLON,<br><br>                        *Plaintiff*,<br><br>v.<br><br>KARL CLAVER-OBINNA and<br>SABIH RAHMAN<br><br>                        *Defendants*. | Civil Action No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>MARCH 21, 2023 |

Plaintiff Dr. Agdel Jose Hernandez-Colon ("Dr. Hernandez" or "Plaintiff") by and through his attorneys, the Law Office of Austin B. Johns, LLC and Lewis & Lin LLC, for his Complaint against Karl Claver-Obinna ("Dr. Claver-Obinna") and Sabih Rahman ("Dr. Rahman," or collectively "Defendants"), respectfully alleges as follows:

## STATEMENT OF THE CASE

1.      Plaintiff brings this action for defamation per se arising from a coordinated campaign by Defendants, who were medical residents under the supervision of Plaintiff, which ultimately resulted in Plaintiff's termination of employment from the hospital where Defendants and Plaintiff were employed.

2.      Dr. Hernandez was employed as the Medical Director of Behavior Health at Putnam Hospital ("Putnam Hospital") in Carmel, New York, and the Director of Putnam Hospital's Psychiatric Residency Program. Dr. Hernandez is a gay man and, although he does not actively hide the details of her personal life, is not "out" professionally.

3.      A group of new residents began at Putnam Hospital in July 2021. Pursuant to his

1

responsibility as the hospital's Director of Psychiatric Residency Program, Plaintiff had direct supervision and contact with the new residents.

4. A group of these new residents, led by Dr. Claver-Obinna and Dr. Rahman, began a campaign of personal and invasive questions about Dr. Hernandez's sexuality. Defendants then orchestrated a campaign to spread defamatory statements to fellow employees at Putnam Hospital and to hospital administration.

5. On April 3, 2022, Putnam County suspended Dr. Hernandez, pending an investigation into false claims made by Defendants that he engaged in "egregious conduct towards Psychiatry Residents that included, in part, using call as punishment, [and] making insensitive and highly inappropriate comments about African Americans, females and nurse practitioners." Dr. Hernandez denies these accusations.

6. On April 7, 2022, Putnam Hospital terminated Dr. Hernandez's employment. In the letter terminating Dr. Hernandez employment, Putnam Hospital stated Dr. Hernandez was being fired "following an investigation" into the allegations that were subject of his suspension.

7. Defendants' defamatory statements to other residents and Putnam Hospital's Human Resource Department resulted directly in Dr. Hernandez's termination. Dr. Hernandez was not provided any documented proof Dr. Hernandez made these statements.

8. Upon information and belief, Defendants' false and defamatory statements were told or circulated among the resident class, the hospital's Human Resource Department, and an untold number of other hospital employees. Furthermore, upon information and belief, these statements were made specifically to harm Dr. Hernandez's career and remove him from his position in Putnam Hospital. As a result of Defendants' actions, Plaintiff has been, and will

continue to be, substantially and irreparably harmed.

## PARTIES

9. Plaintiff Dr. Agdel Hernandez-Colon is an individual domiciled in the State of New Jersey, County of Bergen.

10. Upon information and belief, Defendant Karl Claver-Obinna is an individual domiciled in Connecticut, County of Fairfield.

11. Upon information and belief, Defendant Sabih Rahman is an individual domiciled in Connecticut, County of Fairfield.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

13. This Court has personal jurisdiction over Defendants as both Defendants are domiciled in the state of Connecticut, and thus this Court has general jurisdiction over both Defendants.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) or alternatively under 28 U.S.C. § 1391(b)(3).

## BACKGROUND COMMON TO ALL CLAIMS

**Plaintiff's Background**

15. Plaintiff is a board-certified psychiatrist who received his medical degree from the University of Puerto Rico Medical School, a fully accredited school in the United States. After graduating *cum laude*, he trained and served as the Chief Resident at Georgetown University Hospital in Washington, D.C.

16. Plaintiff has been working extensively with medical students and psychiatry residents, in various capacities, since 2009. He operated as the chief resident in charge of students and trainees in a VA Hospital in Washington D.C, supervising residents and students during his fellowship, and worked in Beth Israel Hospital in Manhattan. He was Director of the Comprehensive Emergency Psychiatry Program for several years at Brookdale Hospital as core faculty, and chaired the Emergency Psychiatry section of the department. He was the Associate Psychiatry Residency Director at Hackensack Meridian Jersey Shore Medical Center and Program Director of the Residency, Medical Director of Behavioral Health and Chair at Putnam Hospital in Carmel NY.

17. Plaintiff is a fellow of the American Psychiatric Association and a member of the Association of Psychiatry Residency Program Directors as well as the Association of Gay and Lesbian Psychiatrists.

18. As stated previously, Plaintiff is a gay man. He does not present himself as "out" in his workplace, meaning he does not share his sexual orientation with his colleagues. He does not, however, actively hide the details of his personal life, and he publicizes online that his clinical interests include LGBTQ+ issues and men's mental health.

**Plaintiff's Employment**

19. Plaintiff was hired by Nuvance Health Medical Practice, P.C. f/k/a Health Quest Medical Practice, P.C. under a Physician Employment Agreement executed on June 4, 2019, to become the Medical Director of the Behavior Health Services department at Putnam Hospital. He began working at Nuvance's Putnam Hospital on October 14, 2019, as the Director of Putnam Hospital's Psychiatric Residency Program.

20. Part of Plaintiff's responsibilities included supervising and managing resident

doctors in the psychiatric department. Medical residents are medical school graduates with a Doctor of Medicine (MD) degree who take part in a post-graduate training program. Medical residents provide direct care to patients, including diagnosing, managing, and treating health conditions and injuries.

21. On or about July 1, 2020, Plaintiff started working with his first group of residents. During this first year of residency, no resident made any complaints about him and these individuals completed their first year on June 30, 2021, without issue. Resident surveys after the program were positive and, at no point did Putnam Hospital approach Plaintiff to discuss ways to improve the program or to suggest that he run it a different way.

**Pattern of Harassment Against Plaintiff**

22. On July 1, 2021, a group of residents began their residency under Plaintiff's supervision. Immediately, a number of these residents became hostile towards Plaintiff, often making homophobic remarks in his presence or inquiring about his dating life to attempt to coerce him into disclosing his sexual orientation.

23. Upon information and belief, this group of residents who seemed to immediately target Dr. Hernandez conspired to complain about him because they learned or perceived that Plaintiff was gay, and disapproved of his orientation based upon their own religious beliefs.

24. For example, in July 2021 a resident, Jesus Del Val, attempted to pressure Plaintiff to disclose whether he knew a former resident "well," seemingly insinuating some sort of inappropriate relationship or attempting to uncover personal information about the Complainant.

25. Similarly, in August 2021, Plaintiff permitted a resident, Zamaar Malik, to use

5

Plaintiff's personal computer for a class presentation. Mr. Malik then proceeded to invade Plaintiff's privacy by rummaging through his photographs, files, and/or internet search history while borrowing the laptop for that short period. The laptop contained personal photographs of Plaintiff with male friends and/or people he dated as well as information about LBGTQ+ groups or events that the Plaintiff participated in. After using the laptop, Mr. Malik publicly questioned Plaintiff's sexual orientation when he remarked in front of the group, "I do not see you dating women." The Plaintiff took offense at the homophobic nature of the comment and felt that his privacy was violated since the observation substantiated that Mr. Malik had, in fact, viewed the computer's contents and intended to share what he saw with the other residents.

26.     Upon information and belief, during early 2022 another resident, Farhan Hussein became hostile towards Plaintiff, making homophobic remarks in his presence or inquiring about his dating life to coerce Plaintiff into disclosing his sexual orientation.

27.     During a March 18, 2022 business dinner, Mr. Hussein asked why Dr. Hernandez had a private practice specializing in LGBTQ+ patients and why he is a member of the Gay and Lesbian Psychiatry Association. Mr. Hussein continued asking "What's that about?" Dr. Hernandez responded stating that in order to grow patients in private practice you have to specialize in many areas. Dr. Hernandez did not disclose his sexual orientation despite Mr. Hussein's urgings.

28.     Upon information and belief, Mr. Hussein was told to make these inquires on behalf of Dr. Rahman and Dr. Claver-Obinna.

**Defendants' Disparaging and Defamatory Statements**

29.     After this continued campaign of harassing behavior, Dr. Rahman and Dr. Claver-Obinna began disseminating false and defamatory statements to Putnam Hospital staff

6

and administration. These defamatory statements ultimately resulted in Plaintiff's termination.

*Actions of Defendant Karl Claver-Obinna*

30. The resident who appeared to be the main instigator of defamatory attacks on Dr. Hernandez was Defendant Claver-Obinna.

31. In July 2021, multiple physicians at Putnam Hospital began having problems with Dr. Claver-Obinna's performance.

32. As a result, in September 2021, Dr. Claver-Obinna was placed on a Performance Improvement Plan ("PIP").

33. On December 15, 2021, Dr. Claver-Obinna was suspended as a result of two consecutive patient care errors where he placed patient safety at risk. Days later, on January 3, 2022, Dr. Claver-Obinna was placed on a sixty (60) day probationary period. Issues regarding his performance as to patient safety continued.

34. By the end of January 2022, Putnam Hospital's Clinical Care Committee ("CCC") voted to end Dr. Claver-Obinna's probation and for non-renewal of his residency contract, meaning he would no longer be employed by Putnam Hospital after his one-year term contract was completed.

35. On March 9, 2022, Putnam Hospital sent Dr. Claver-Obinna his non-renewal notice.

36. After each professional setback, Dr. Claver-Obinna organized his fellow residents to orchestrate a series of unfounded complaints about Plaintiff in an attempt to disparage his reputation, and cause Plaintiff's termination.

37. Upon information and belief, Dr. Claver-Obinna blamed Plaintiff for having been placed on the PIP, rather than the other physicians who complained related to Dr. Claver-

Obinna's performance.

38. Upon information and belief, Dr. Claver-Obinna focused the blame for his PIP and poor performance on Plaintiff because he perceived that Dr. Hernandez was a gay man and would discriminate against Dr. Claver-Obinna because of his sexuality, and any attacks on Dr. Hernandez were therefore justified.

39. In his sessions with a psychologist, Dr. Claver-Obinna referred to Dr. Hernandez as "that faggot" on multiple occasions.

40. The reported grievances and homophobic inquiries escalated each time Dr. Claver-Obinna faced any disciplinary action in the workplace. The commentary by the residents group Drs. Claver-Obinna and Rahman belonged to intensified in late January/early February 2022, after Plaintiff had multiple discussions with Dr. Claver-Obinna about the quality of his notes.

41. The week of March 21, 2022, Dr. Claver-Obinna sought an appeal of Putnam Hospital's non-renewal decision by submitting a letter to CCC ("Appeal Letter").

42. The Appeal Letter stated that Dr. Claver-Obinna had been yelled at, belittled, and berated by his program director, Dr. Hernandez.

43. In this letter, Dr. Claver-Obinna stated that he was forced to not voice complaints by Dr. Hernandez and was told by Dr. Hernandez that he had a bad attitude and didn't take criticism well.

44. In this letter, Dr. Claver-Obinna further stated "I am not saying this is discrimination, and I really do not think it is as I reflected on it, but how else am I supposed to view it," in reference to Dr. Hernandez's treatment of him.

45. On April 1, 2022, Putnam Hospital held a virtual meeting regarding Dr.

Claver-Obinna's appeal of his non-renewal, in which both Plaintiff and Dr. Claver-Obinna were in attendance ("April 1st Meeting"). During this meeting, Dr. Claver-Obinna verbally attacked Dr. Hernandez and falsely accused him of being abusive in his position as program director. Reiterating his statements made in the Appeal Letter, Dr. Hernandez was responsible for Dr. Claver-Obinna's professional shortcomings, and that Dr. Hernandez was dismissive of issues that were brought to him.

46. Dr. Hernandez denies any allegations of abuse in his time as program director.

47. Dr. Claver-Obinna knew these statements to be false when he reported them in the non-renewal meeting, and instead was trying to obfuscate responsibility for his patient errors.

48. On the afternoon of April 1, 2022, Dr. Claver-Obinna made a complaint to Putnam Hospital Human Resources ("April 1st Complaint").

49. The April 1st Complaint further stated that Dr. Hernandez was abusive. Namely, Dr. Claver-Obinna's complaint falsely accused Dr. Hernandez of screaming and yelling at residents in his program; telling them they "sucked;" and threatening to withhold pay to residents, fail them, or deny their vacation requests and assign them extra on-call shifts if they did not follow Dr. Hernandez's requests.

50. The above allegations are false. Dr. Hernandez never screamed or yelled at residents. Nor did he ever tell them they "sucked." Nor did he threaten to take improper action if they did not follow his requests.

51. Dr. Claver-Obinna again made these statements knowing their falsity in an attempt to discredit Dr. Hernandez professionally.

*Actions of Defendant Rahman*

52. After his recruitment in July 2021, Dr. Rahman began making numerous and pointed comments regarding Dr. Hernandez's sexual orientation. In early 2022, Dr. Rahman went into Dr. Hernandez's office multiple times, referencing professional dinners that were held regularly between the director and residents, and asked, "When are you bringing your girlfriend to any of these dinners?" Dr. Rahman also insisted that Dr. Hernandez come with him to the gym for a workout. Dr. Hernandez did not answer any of these comments.

53. In December of 2021, Dr. Rahman was assigned to the inpatient substance abuse program to replace a co-worker who had fallen ill. This program necessitated Dr. Rahman to work nights, holidays, and weekends. Dr. Rahman was upset by this change and called, emailed, and texted Dr. Hernandez to express his displeasure and insist that he be replaced as the resident assigned to the inpatient substance abuse unit.

54. During this time, Dr. Rahman began asking other employees, namely the two nurses and the two social workers in the psychiatric unit, about Dr. Hernandez's personal life including his marital status and if he was well liked among the staff. One of these staff members responded that they would not answer that, questioning why it mattered, and that Dr. Hernandez is a good doctor.

55. On April 4, 2022, in a town-hall style meeting held by Putnam Hospital's Human Resources Department ("April 4th Town Hall") Dr. Rahman voiced several slanderous statements.

56. During the April 4th Town Hall Dr. Rahman described Dr. Hernandez as "manic".

57. During the April 4th Town Hall, Dr. Rahman stated that Dr. Hernandez made

derogatory comments about nurse practitioners, namely that, "nurse practitioners should stay home, cook and clean and let doctors care for patients."

58. During the April 4th Town Hall, Dr. Rahman stated that Dr. Hernandez made comments about "blacks" or "these black people" such that they are all the same, they are all from the streets and will always be on the streets, and they are drug users.

59. Dr. Hernandez did not make any of these statements, and any allegation that he did is false.

60. Dr. Rahman made these statements with knowledge of their falsity and with the intent of damaging Dr. Hernandez's professional reputation.

61. On April 8, 2022, the residents were notified in a Zoom meeting regarding Dr. Hernandez's departure. Dr. Rahman smiled and laughed when he was told Dr. Hernandez's employment was terminated.

**Plaintiff's Termination**

62. On April 3, 2022, Putnam Hospital suspended Dr. Hernandez with pay, pending further investigation into Defendants' allegations that he engaged in "egregious conduct towards Psychiatry Residents that included, in part, using call as punishment, making insensitive and highly inappropriate comments about African Americans, females and nurse practitioners."

63. On April 7, 2022, Putnam Hospital terminated Plaintiff's employment. The letter terminating Plaintiff's employment stated he was being fired "following an investigation" into the allegations that were the subject of his suspension.

64. This investigation is a direct result of the defamatory statements made by Defendants in the Appeal Letter, the April 1st Meeting, the April 1st Complaint, and the April

4th Town Hall.

66. Plaintiff has not been able to obtain similar employment since his termination from Putnam Hospital.

66. Drs. Claver-Obinna and Rahman defamed Plaintiff by reporting false accusations to Putnam Hospital, which resulted in the direct loss of Plaintiff's employment.

**FIRST CAUSE OF ACTION**
**DEFAMATION *PER SE***

67. Plaintiff repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

68. Defendants have intentionally made knowingly false statements of fact about Plaintiff, including but not limited to false accusations that Plaintiff was abusive, discriminatory, and that he made disparaging comments about nurse practitioners and people of color.

69. Defamatory statements were made several times to several different groups of people, including but not limited to, in the Appeal Letter, in the April 1st Meeting, in the April 1st Complaint, and in the April 4th Town Hall.

70. These statements were communicated to third persons, including Putnam Hospital administration.

71. The statements made by Defendants were made maliciously and willfully, with the intent and effect of causing harm to Plaintiff's reputation and employment.

72. The claims made by Defendants are not only false, but defamatory in that such claims are so injurious to the reputation so incongruous and injurious to the ability of Plaintiff to maintain his employment or find similar employment as a medical doctor.

73. At minimum, the claims made by Defendants were made in reckless disregard

12

for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiff.

74. The claims were made directly against and directly referencing Plaintiff and were so understood by those who read or heard Defendants' statements inasmuch as the statements clearly identify Plaintiff by name.

75. Defendants have no privilege to make the false and disparaging statements and claims alleged herein.

76. Defendants made these claims and false reports with actual malice, in that the statements were made as a result of Defendants' disapproval of Plaintiff's sexuality in an attempt to discredit and ultimately remove him from his managing position at Putnam Hospital. Alternatively, Defendants' statements were published with reckless disregard for the truth or falsity of same and were made solely to injure Plaintiff.

77. Defendants' claims tend to injuriously affect Plaintiff in his profession as a licensed and practicing medical practitioner.

78. As a direct result of Defendants' acts, Plaintiff lost his employment and has been unable to obtain similar employment. Plaintiff has suffered irreparable damage to his reputation and further damage to his future employment opportunities.

79. As a result of the willful and malicious nature of the defamation, Plaintiff is entitled to punitive damages.

80. Plaintiff Dr. Hernandez has suffered harm to his reputation, which directly resulted in his termination from Putnam Hospital. Dr. Hernandez has been harmed and continues to be harmed by Defendants' statements and, as such, Plaintiff is entitled to an award of actual, special, and exemplary damages in an amount to be proved at trial, including

compensation for his time, effort, and attorneys' fees, as well as injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants awarding Plaintiff:

1. A temporary and permanent order enjoining Defendants from publishing the statements constituting defamation identified above in relation to Plaintiff, or any false statements similar thereto, and directing Defendants and their respective agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to take such curative action, including issuing a retraction and apology, as would remedy the damage to Plaintiff's reputation;

2. A temporary and permanent order enjoining Defendants from contacting Plaintiff's current or prospective employers, business associates, or co-workers, directly or indirectly in any way whatsoever, including but not limited to, via social media, text message, mail or email;

3. A judgment declaring that Defendant's conduct constitutes defamation;

4. An award of compensatory damages according to proof at trial but in an amount not less than $10,000,000.00 (ten million dollars);

5. An award of punitive damages, in an amount to be determined at trial;

6. An award of Plaintiff's reasonable attorneys' fees, costs, and disbursements in this civil action; and

7. An award of such other and further relief to which Plaintiff may be entitled as a matter of equity, or which the Court determines to be just and proper.

## JURY DEMAND

PLEASE TAKE NOTICE that the Plaintiff demands a trial of the issues by jury.

Dated: March 21, 2023
        Hartford, Connecticut

                                          THE PLAINTIFF
                                          AGDEL JOSE HERNANDEZ-COLON

By:    /s/ Austin Berescik-Johns    .
       Austin Berescik-Johns (CT30535)
       Law Office of Austin B. Johns, LLC
       36 Russ Street
       Hartford, CT 06106
       Tel: (860) 785-6225
       Fax: (860) 785-6733
       Email: austin@abjohnslaw.com

       David D. Lin (to be admitted pro hac vice)
       Lewis & Lin, LLC
       77 Sands Street, 6th Floor
       Brooklyn, NY 11201
       Tel: (718) 243-9323
       Fax: (718) 243-9326
       Email: david@ilawco.com

       *Counsel for Plaintiff*